THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* JOHN M. POLLOCK, APPELLANT.

*Section 528 of the Penal Code, in changing embezzlement to larceny, did not change the proof required — criminal intent — a question for the jury.*

Section 528 of the Pedal Code, providing that " any person who, with intent to deprive or defraud the true owner of his property or of the use and benefit thereof, * * * appropriates to his own use * * * any money," etc., is guilty of larceny, has changed the law as it formerly existed, in that it makes what was formerly embezzlement, and obtaining money or goods under false pretenses, larceny, but it has not changed the methods of proof required to establish these respective offenses.

To constitute the offense of larceny, as defined in this section, there must be evidence of an intent to deprive or defraud the owner of his property; and the jury must find such criminal intent as a fact, upon the evidence, before a conviction can be had.

Where it appeared upon the trial of a banker charged with grand larceny, that the party, whose money it was claimed had been appropriated by the banker, had long been his customer and knew that the money was on deposit to his credit, and the question was presented as to whether the relation, at the time of the failure of the defendant's firm, was that of agent or debtor:

*Held,* that it was competent, upon the question of intent, to show to the jury, and permit it to know all of the surroundings of the case.

That the court erred in not submitting the question of intent to it.

APPEAL by the defendant from a judgment of conviction of the crime of grand larceny, rendered against him by the Court of Sessions held at the city of Newburgh on the 25th day of September, 1888.

The defendant was a junior member of the firm of John R. Wiltsie & Son, which carried on, at Newburgh, the business of bankers, brokers, steamship insurance, real estate and exchange agents. In October, 1885, one James Hamilton, of Newburgh, gave to Arthur V. Wiltsie, one of the partners, money to invest. The money was invested in a western bond and mortgage, and the papers given to Hamilton. Thereafter the money was collected from the mortgagor, by the firm, through its agent, and received by it on March 6, 1888, and placed as a deposit to the credit of James Hamilton, trustee, on the books of the bank, and the proceeds were passed into the general funds of the bank in accordance with its usual custom to do so. No charge was made for this service. It was the custom of the bank to pay out deposits on checks presented against the same for payment. No check was ever presented for this money, and on the twenty-eighth of March the bank failed. The money had, in the meantime, been paid out in the usual course of business of the firm. Upon the failure of the bank, the firm made an assignment to W. M. O. Campbell for the benefit of the creditors. Hamilton had been a customer of the firm since 1862, and knew them to be bankers.

Upon the trial of the action the court refused to charge as requested by the defendant " that the jury must believe or find that there was a criminal or felonious intent on the part of the defendant or they cannot convict." Saying," I decline to use the term criminal or felonious, there is no such word used in the statute." In its charge the court compared the defendant's case to Tweed's case, and stated that " this statute was intended to reach just such cases as this." A receipt was given by the firm to Hamilton, stating that the papers were received by the defendant's bank for collection for his account, and that no charge was made for the collecting of them. The court charged that " their duty was to collect this money as his agents, and to pay it over to him, and I charge you, as a matter of law, that no check was necessary to be drawn by him or offered to be drawn by him." The court also charged that " if they took this money

and put it with their own money, or paid it out for their own debts, or mixed it with their own funds, it was an appropriation of the money to their own use, under the law as I understand the law."

*McCroskery & Seeger* and *George H. Decker*, for the appellant.

*Russel Headley*, district attorney, for the people.

PRATT, J. :

The statute (Penal Code, § 528), under which the defendant was indicted and convicted, provides that " any person who, with intent to deprive or defraud the true owner of his property or of the use and benefit thereof, * * * or appropriates to his own use * * * any money," etc., is guilty of larceny, changes the law as it formerly existed, in that it makes what was formerly embezzlement and obtaining of money or goods under false pretenses larceny, but it has not changed the methods of proof of these respective offenses. It simply classes these respective offenses as larceny and requires the same proof of criminal intent to make out a case as was required before the Penal Code was passed. The section, it will be observed, begins with the statement that " a person who, with the intent to deprive or defraud the true owner of his property," etc., does the acts specified, shall be guilty of larceny. To constitute guilt there must be evidence of intent to deprive or defraud the owner, and the jury must find such criminal intent as a fact upon the evidence before a conviction can be had. The jury had a clear right to pass directly upon the question of intent, and, by taking that question from the jury, we think the court committed an error.

It appears that the defendant was a banker, and the complainant had long been his customer, and knew that the money was on deposit for his credit, and it became important to determine whether the relation at the time of the failure of the defendant's firm was that of agent or debtor ; it was certainly competent upon the question of intent to show and permit the jury to know all the surrounding circumstances of the case. That part of the charge which referred to what was termed the Tweed statute also was calculated to prejudice the case for defendant. It is true that the evidence is sufficient to sustain the verdict if the jury disbelieved the defendant and believed the evidence of Hamilton, but the defendant was entitled

to have the issue of an intent directly passed upon by the jury. It was not conclusive evidence, under all the circumstances, to show that defendant merely mixed the money with his own funds, but it was incumbent on the people to satisfy the jury that it was so mixed with the intent, or was at some time used with intent to deprive the owner thereof.

We also think the charge was erroneous upon the question relating to the good character of the defendant. Such evidence is competent to be submitted to a jury for the purpose of raising a doubt. It is not essential that a case must be doubtful before such evidence can be considered.

Upon the whole case, we think there were errors which worked prejudice to the defendant sufficient to warrant a reversal of the judgment and the ordering of a new trial.

DYKMAN, J., concurred.

Conviction and judgment reversed, and new trial granted.